RICKER ET AL., APPELLANTS, *v.* CITY OF HELENA ET AL., RESPONDENTS.

(No. 5,351.)

(Submitted September 11, 1923.   Decided September 26, 1923.)

[218 Pac. 1049.]

*Injunction—Cities and Towns — Special Improvements — Protests—Sufficiency — How Determined — Powers of Council— Discretion—Burden of Proof.*

Cities and Towns—Special Improvements—Protests—City Owned Property to be Considered in Determining Sufficiency.
   1.   In determining whether forty per cent of the owners of property affected by a proposed special improvement have filed protests against it, the city or town council is authorized by section 5229, Revised Codes of 1921, as amended by Chapter 135, Laws of 1923, to take into consideration property owned by it and included in the district,

---

1.   Liability of municipal property to special assessment, see notes in 16 **Ann. Cas.** 888; **Ann. Cas.** 1917D, 849.

such property being subject to assessment therefor the same as privately owned property.

Same—Protests—Sufficiency—What Property Council may Take into Consideration.

2.  Where a railway company had conveyed to a city a strip of land for park purposes under an agreement with the city that the company in consideration of the conveyance should be released from payment of special improvement taxes upon another tract owned by it fronting an unimproved street and included in a proposed district, the city council properly considered such property in determining whether sufficient protests had been filed to defeat the improvement, the city being liable under the contract for assessments levied against the property, and therefore the contention that, it being relieved from payment of assessments, the tract should not have been considered has no merit.

Same—Boundaries of Improvement District—Powers of Council.

3.  Under section 5227, Revised Codes of 1921, a city has the power to fix the boundary of a special improvement district at any distance from the front line of a street and is not required to include the whole platted area of each lot.

Same—Special Benefits to Lots—When Determination by Council conclusive—When not.

4.  Whether the construction of a special improvement will result in special benefit to the various lots and parcels of land embraced in the district is primarily a question for determination by the city council with which courts will not interfere except upon the ground of fraud or such manifest abuse of discretion as amounts to arbitrary action.

Same—Creation of District—What not Abuse of Discretion.

5.  In an action to set aside the proceedings of a city council had in the creation of a special street improvement district and to enjoin the carrying out of a paving contract entered into, on the grounds that the city had joined in one district property abutting on several streets, that the character of work to be done on one street was different from that to be done on others, and that property on several streets would not be benefited by the paving on another, proceedings reviewed and *held*, under the above rule and in view of the power lodged in the city council by section 5227 to include in one district and in one contract any number of streets, any kind of work, *etc.*, that the council did not abuse its discretion.

Same—Construction of Pavement—Benefit to Lots on Connecting Street.

6.  Since the value and benefit of a street pavement depend upon its extent, the paving of a street crossing the main street of a city may be of special benefit to lots along the latter street included in the same improvement district and in the same contract providing for the paving of the former and the resurfacing of the latter.

2.  Assessment of railroad right of way for street improvements, see notes in 2 Ann. Cas. 587; 12 Ann. Cas. 635; Ann. Cas. 1916E, 597.

3.  Right to subdivide private owner's land for purpose of assessment for public improvements, see note in 23 L. R. A. (n. s.) 405.

6.  Assessment of cost of improving street intersection, see note in 21 Ann. Cas. 635.

Same—Special Improvements—Injunction—Burden of Proof.
    7.  A party seeking to enjoin the city council from proceeding
    under a contract for the construction of a special improvement has
    the burden of showing that the council in creating the district and
    proceeding to have the work done exceeded its authority or acted in
    an arbitrary manner.

*Appeal from District Court, Lewis and Clark County, in the First Judicial District; Stanley E. Felt, a Judge of the Sixteenth District, presiding.*

SUIT by Jesse C. Ricker and others against the City of Helena and others. Judgment for defendants and plaintiffs appeal. Affirmed.

Cause submitted on briefs of Counsel.

*Messrs. Day & Mapes,* for Appellants.

"Due process of law" as applied to assessments for special improvements requires that the proceedings must limit the area to be assessed to the property specially benefited, and, when the assessment upon the district plan is used, there can be included only such property as is subject to assessment because of such benefits, and which can be compelled to bear its share of the total cost. The city council cannot, by including property of its own, force property owners into a district, even by agreeing to pay its share of the costs of the improvement. Such a procedure is violative of the benefit rule, which is so thoroughly established by the authorities.

The theory which underlies all assessments of property for special improvements is that the property is benefited by the improvement, and should bear a proportion of the costs thereof corresponding to this benefit. There can be little doubt that an assessment upon property which is not benefited is void, or that an exaction in the way of a special assessment in excess of the benefits is to the extent of such excess void and without due process of law. (*Myles Salt Co.* v. *Board of Commrs.,* 239 U. S. 478, L. R. A. 1918E, 190, C0 L. Ed. 392, 36 Sup. Ct. Rep. 204 [see, also, Rose's

[68 Mont. 350.]

U. S. Notes] ; *Horton Inv. Co.* v. *Seattle,* 94 Wash. 556, L. R. A. 1918E, 194, 162 Pac. 989; *Spring Street Co.* v. *City of Los Angeles,* 170 Cal. 24, L. R. A. 1918E, 197, 148 Pac. 217.)

The question of difficulty in this connection is how far the determination of the authorities having in charge the creation of the district that the property is to be benefited concludes the court in its examination. The authorities hold that its decision will control except when it appears that the act of the city council is arbitrary or a plain abuse of its discretion. The supreme court of the United States has laid down the following rule as to what constitutes an abuse of discretion or arbitrary acts. "If the law is of such a character that there is no reasonable presumption that substantial justice generally will be done, but the probability is that the parties will be taxed disproportionately to each other and to the benefit conferred, the law cannot stand against the complaint of one so taxed in fact." (*Gast Realty & Invest. Co.* v. *Schneider Granite Co.,* 240 U. S. 55, 60 L. Ed. 523, 36 Sup. Ct. Rep. 254; *Martin* v. *District of Columbia,* 205 U. S. 135, 51 L. Ed. 743, 27 Sup. Ct. Rep. 440 [see, also, Rose's U. S. Notes] ; *Kansas City Southern Ry. Co.* v. *Road Imp. Dist. No. 6,* 256 U. S. 658, 65 L. Ed. 1151, 41 Sup. Ct. Rep. 604; also, *Schneider Granite Co.* v. *Gast Realty Co.,* 245 U. S. 286, 62 L. Ed. 292, 38 Sup. Ct. Rep. 125; *Withnell* v. *Ruecking Cons. Co.,* 249 U. S. 63, 63 L. Ed. 479, 39 Sup. Ct. Rep. 200.) There are cases which hold that where in the creation of the district the city council undertakes to divide lots and parcels which are separate and distinct, the action is arbitrary. (*Chicago* v. *Wells,* 236 Ill. 129, 127 Am. St. Rep. 282, 23 L. R. A. (n. s.) 405, 86 N. E. 197; *Iowa Pipe & Tile Co.* v. *Callanan,* 125 Iowa, 358, 106 Am. St. Rep. 311, 3 Ann. Cas. 7, 67 L. R. A. 408, 101 N. W. 141; *Louisville & N. R. Co.* v. *Barber Asphalt Paving Co.,* 197 U. S. 430, 49 L. Ed. 819, 25 Sup. Ct. Rep. 466; *Martin* v.

*District of Columbia,* 205 U. S. 135, 51 L. Ed. 743, 27 Sup. Ct. Rep. 440 [see, also, Rose's U. S. Notes].)

The particular objection to the present action of the city council is that it undertakes to combine in one district things which are not related to or connected with each other. It is true that it has the power to include several kinds of work in one improvement district, and it may include the same kind of work upon several streets in one district, but we contend that it cannot include separate and distinct kinds of improvement of separate and distinct streets because to do so is to perform work, either in kind or place, which does not essentially and necessarily effect the improvement of the several pieces of land to be assessed. (See *French* v. *Barber Asphalt Co.,* 181 U. S. 324, 325, 45 L. Ed. 879, 21 Sup. Ct. Rep. 625 [see, also, Rose's U. S. Notes]; *Remillard* v. *Blake & B. Co.,* 169 Cal. 277, Ann. Cas. 1916D, 451, 146 Pac. 634; *Corby* v. *Detroit,* 180 Mich. 208, 146 N. W. 670.)

*Mr. S. V. Stewart* and *Messrs. Cooper, Stephenson & Hoover,* for Respondents.

Counsel argue that the city has no right to pave in front of its property, and by virtue of that fact the property cannot be assessed; hence, the private property of the individual owner will be assessed to pay for the pavement in front of the park property. This, of course, is contrary to the law. It has long been settled that public property may be assessed for special improvements in the same manner that private property is assessed. The argument is that public property being exempt from taxation, is also exempt from these assessments. But the authorities have long recognized a distinction between general taxes which are for the benefit of the public generally, and which, in the nature of things, the public must directly or indirectly pay, and special assessments for the benefit of particular property which are a charge upon the property benefited. If this be private property, then each owner of such property pays his share; if it

be public property, the city pays it as the agent for the entire body of citizens who are assuming to have been benefited to that extent. (*New Orleans* v. *Warner*, 175 U. S. 120, 44 L. Ed. 96, 20 Sup. Ct. Rep. 42 [see, also, Rose's U. S. Notes]; *City of Kalispell* v. *School Dist. No. 5*, 45 Mont. 221, Ann. Cas. 1913D, 1101, 122 Pac. 742.)

The fact that the district in question includes a part of an avenue already paved does not invalidate the district, nor does the fact that work of a slightly different character on other streets is included in the district invalidate it. (*San Francisco Paving Co.* v. *Egan*, 146 Cal. 635, 80 Pac. 1076; *H. Crummey, Inc.*; v. *Howe*, 48 Cal. App. 542, 192 Pac. 112.)

It has been frequently held where statutes are much less clear upon the subject than ours that more than one street may be included in the same district. (*Walker* v. *People*, 170 Ill. 410, 48 N. E. 1010, where a sewer district was created to include the entire city.) In the case of *Lewis* v. *Albertson*, 23 Ind. App. 147, 53 N. E. 1071, it was held that there could be included in one improvement district for macadamizing and paving any number of different streets even though they are noncontiguous. (See, also, *Dement* v. *City of Caldwell*, 22 Idaho, 62, 125 Pac. 200.)

MR. JUSTICE STARK delivered the opinion of the court.

On March 2, 1923, the city council of Helena duly passed a resolution of intention to create special improvement district No. 139, in said city, for the paving of Neill Avenue, from Park Avenue to Main Street, and certain described portions of Main Street and Fuller and Sixth Avenues. In fixing the limits of the proposed district, the platted boundaries of the several parcels of land embraced therein were not followed, but a line was fixed at a distance of twenty-five feet from the front of the streets to be improved—that is, the district embraced a strip twenty-five feet wide along each side of the included streets. The total area of the district

thus described was 172,285 square feet. Included in this area were two strips of land along the south side of Neill Avenue, containing a total area of 14,875 square feet belonging to the city, which it had theretofore dedicated to the public as a park, and also a strip along the northern side of the same street, containing an area of 19,250 square feet, belonging to the Great Northern Railway Company, with which company the city had theretofore entered into a contract to the effect that it should not be required to pay for special improvements along said strip, such as contemplated in the resolution, in consideration of the conveyance to the city of the lands contained in the park above mentioned. Main Street is the principal thoroughfare of the city, while the portions of Sixth Avenue and Neill Avenue included in the district are side streets leading into it, furnishing the principal means of approach thereto from the western portion of the city; the latter being so situated as to "be and become the principal traveled avenue between the east and west sides of the city." The part of Fuller Avenue included in the district extends northerly from the included portion of Sixth Avenue for a distance of one block. The general character of the improvements contemplated in the resolution was the pavement of the streets with bituminous concrete. Main Street, Fuller Avenue and Sixth Avenue were already paved, and the existing pavement was to be used as a base for the new pavement, while Neill Avenue was unpaved, and pavement thereon was to have a crushed rock base.

Within the time designated in the resolution when objections and protests against the creation of the district could be made, the plaintiffs, and other property owners, representing 62,618 square feet of the land embraced therein, filed their protests. In due time the city council considered the protests filed, determined that they were insufficient in area to affect the proceeding, and thereupon finally passed the resolution of intention, and also a resolution creating the district. Thereafter a contract for the construction of the

proposed improvements was awarded to the defendant F. B. Burch & Sons Construction Company.

On May 29, 1923, the plaintiffs commenced this suit, seeking to have the action of the city council in creating this special improvement district and in entering into the contract with the defendant construction company declared null and i void, and to enjoin the defendants from proceeding further thereon. Upon the filing of the complaint, an order was issued requiring the defendants to show cause why the prayer of the complaint should not be granted. To this complaint the defendants filed an answer on June 15. The order to show cause came on for hearing on the nineteenth day of June, whereupon the defendants filed a motion to quash the same, on the ground that the complaint did not state facts sufficient to warrant the issuance of an injunction. The matter was argued to the court and submitted under stipulation of counsel that final judgment might be entered upon the merits. On June 21 the court made an order sustaining the motion to quash the order to show cause, and directed judgment on the merits to be entered in favor of the defendants. In accordance with this order, judgment was entered on June 22, from which the plaintiffs have appealed.

The first contention of plaintiffs is that the city council did [1] not have the right, in determining the sufficiency of the protests filed by the plaintiffs and other property owners, to include in the area of the district to be assessed for the payment of the improvements either the area of the lots set aside by the city and dedicated to public use as a park, or the lots belonging to the Great Northern Railway Company, which they asserted the city had agreed should not be subject to assessment for special improvements of the character contemplated.

As to the area embraced in the lots set aside for park purposes: The power to determine whether or not the public interest or convenience requires the creation of a special improvement district is vested in the city council by section

5226, Revised Codes of 1921. It was within the province of the legislature to determine what portion, if any, of the owners of property within a proposed district could by protest defer, or defeat, its creation. By the provisions of section 5229, as amended by Chapter 135, Session Laws 1923, the owners of forty per cent of the area of the property to be assessed for the improvements, by filing their protest against the creation of the district, can stay any further proceedings for a period of six months from the time when the protests are filed with the city clerk, but the final paragraph of this section declares that: "In determining whether or not sufficient protests have been filed on a proposed district to prevent further proceedings therein, property owned by a county, city, or town shall be considered, the same as other property in the district."

While counsel state in their brief that "this is but an arbitrary declaration of the legislature, attempting to confer upon the city council a power which it does not itself possess," no authority is cited to sustain the statement, and we can perceive no reason to support it. If the city property is required to share its proportionate part of the expense of the improvement, there is no more reason why it should be excluded in determining whether sufficient protests have been filed than there would be if it was held in private ownership.

The legislature having declared that property owned by a county, city or town shall be considered the same as other property in determining whether sufficient protests against the creation of the district have been filed, it would seem to follow that it intended that such property should be assessed the same as other property to pay for the improvements; but, irrespective of such a legislative declaration, by the decision of this court in *City of Kalispell* v. *School District No. 5,* 45 Mont. 221, Ann. Cas. 1913D, 1101, 122 Pac. 742, this state is committed to the doctrine that the property of a public corporation is subject to assessment for special improvements,

the same as private property. It is our opinion that under this provision the city council was authorized to consider the area embraced within the lots set aside for park purposes in determining whether or not sufficient protests had been filed to prevent further proceedings in the creation of the district.

As to the strip of land owned by the Great Northern Rail-

[2] way Company and lying along the north side of Neill avenue: The complaint alleges in paragraph 9 that: "By an agreement with the city of Helena, in exchange for the conveyance to the city of Helena by the Great Northern Railway Company of the lands hereinbefore described as set aside for public parks, the lands herein last described were agreed to be excluded from assessment by the city of Helena for the payment of the cost of special improvements, such as the improvements contemplated by the said resolution."

The answer in paragraph 3 denies "That such strips or parcels of ground are excluded from assessment by the city of Helena, and denies that such strips or parcels are not liable for the payment of the cost of special improvements contemplated by said resolution." And in paragraph 5 it alleges: "That in truth and in fact, and in legal effect, by virtue of the agreement between the city of Helena and the Great Northern Railway Company with reference to the parcels of land described in paragraph 9, the city of Helena itself * * * is liable for the payment of the tax or special improvement assessment for the special improvement district contemplated by said resolution against the said lots or parcels described in paragraph 9 as being the property of the Great Northern." And in paragraph 8 of the answer it is alleged: "That said lots and parcels are to be and will be assessed, and said assessment will be paid by the city of Helena, in the same proportionate amounts as the assessment upon the other lots in said district are paid."

The contract between the city and the Great Northern Railway Company is not made a part of the pleadings, and all that the record discloses concerning it is set forth in

the above-quoted portions of the complaint and answer. Under these conditions, the court was justified in concluding that under this agreement the strips of land along the north side of Neill Avenue, property of the Great Northern Railway Company, are to be assessed for these improvements the same as other property, but that the city itself in pursuance of its contract will pay such assessment. Hence this strip of land was properly considered by the council as "property to be assessed" for the contemplated improvements, in determining whether or not sufficient protests had been filed to stay the proceedings.

Plaintiffs' next contention is that the action of the city [3] council in fixing the boundaries of the district at a distance of twenty-five feet from the front lines of the streets to be improved, thereby including only portions of the lots, instead of including the whole platted area of each lot, was arbitrary and unlawful. In this connection, counsel have cited the cases of *Chicago* v. *Wells*, 236 Ill. 129, 127 Am. St. Rep. 282, 23 L. R. A. (n. s.) 405, 86 N. E. 197; *Iowa Pipe & Tile Co.* v. *Callanan*, 125 Iowa, 358, 106 Am. St. Rep. 311, 3 Ann. Cas. 7, 67 L. R. A. 408, 101 N. W. 141; *Louisville & N. R. Co.* v. *Barber Asphalt Paving Co.*, 197 U. S. 430, 49 L. Ed. 819, 25 Sup. Ct. Rep. 466; *Martin* v. *District of Columbia*, 205 U. S. 135, 51 L. Ed. 743, 27 Sup. Ct. Rep. 440 [see, also, Rose's U. S. Notes]. An examination of these cases discloses that the facts upon which the decisions were based are so different from those involved in this case that they are not applicable here.

The city council is authorized by section 5227, Revised Codes of 1921, to fix the boundaries of the special improvement district to be created, and there is nothing in the statute which indicates that the size of the lot actually owned by the individual shall determine what portion thereof shall be included. Having the power to fix the boundaries of the district, the council must have the right to fix the same, independently of the ownership of the particular tracts or

parcels abutting upon the improvement, otherwise, as will be directly shown, it might be obliged to fix the boundaries in such a manner that gross inequality of costs and benefit would result.

As to a great majority of the lots embraced in the district, the ratio between the frontage and area is substantially different; for instance, the block on the east side of Main Street, between Eighth Avenue and Sixth Avenue, is divided into fourteen lots or parcels of varying widths. The depth of the lot on the north end of the block, whose side extends along Eighth Avenue, is eighty-six feet, while the depth of the lot on the south end of the block, whose side extends along Sixth Avenue, is 123.1 feet. The increase in the depth of the lots from Eighth Avenue to Sixth Avenue is constant, so that in every instance the south line of a lot is longer than its north line.

The area of a lot with a twenty-five feet frontage on Main Street at the north end of this block would be approximately 1,914 square feet, while the area of a lot with similar frontage at the south end of the block would be approximately 2,462 square feet, or a little more than twenty-three per cent greater than the area of the lot at the north end. Yet it does not appear from the record but that the benefit to the two lots is equal. So that to have included the total area of each of these lots in the district would have made the lot at the south end of the block pay over twenty-three per cent more than the lot at the north end of the block for the same benefit; whereas, by including only the front twenty-five feet of each of these lots, the cost for equal benefit will be substantially identical. What is true of the lots in this block is likewise true of a large majority of the lots in the entire district, as shown by the map.

Under the facts of the case it cannot be successfully asserted that the council, in fixing the boundaries of the district as it did, abused its discretion or acted in an arbitrary manner.

Finally, it is contended on behalf of the plaintiffs that the
[4] city council had no right to join in one district the
property abutting on Main Street, Sixth Avenue, and Fuller
Avenue, with the property abutting on Neill Avenue, because
the character of the work to be done on the latter street was
substantially different from the work to be done on the other
streets, and for the further reason that the property on Main
Street, Fuller Avenue, and Sixth Avenue will not be specially
benefited by the improvement of Neill Avenue.

Section 5226, Revised Codes of 1921, provides: ''The city
council is hereby authorized and empowered to create special
improvement districts, and order the whole, or any portion
or portions, either in length or width, or any one or more
of the streets, avenues, alleys  *  *  *  of any such city,
*  *  *  paved or repaved,  *  *  *  surfaced or resurfaced.
*  *  *  '' And section 5227, regarding the resolution of
intention, provides: ''The city council may include in one
proceeding under one resolution of intention and in one con-
tract any of the different kinds of work mentioned in this Act,
and any number of streets and rights of way, or portions
thereof.''

Whether the construction of the improvements in question
would result in special benefit to the various lots and parcels
of land embraced in the district was primarily a question
for determination by the city council ''and its order for the
construction of the improvements at the expense of the
abutting property owners was a determination that plaintiffs'
property is specially benefited—a determination with which
the courts will not interfere, except upon the ground of
fraud or such manifest abuse of discretion as amounts to
arbitrary action.'' (*Stettheimer* v. *City of Butte,* 62 Mont.
297, 204 Pac. 1039.)

Since there is no element of fraud in the case, it is only
[5] necessary to search the complaint and answer to ascer-
tain whether the proceedings of the council disclose ''such
a manifest abuse of discretion as amounts to arbitrary action.''

It is admitted that each lot or parcel of land described in the complaint and in the special improvement district fronts upon the district to be improved, and that the pavement contemplated in the entire district will front upon each and all of the parcels of land embraced therein, and that all of the lots will be benefited by such pavement equally and proportionately, and that the cost of construction in front of each lot is exactly the same as the cost of the pavement in front of the lots or parcels on Neill Avenue, and it is further admitted that such cost per lot is not greater than would be the cost for paving Main Street, Fuller Avenue, and Sixth Avenue, if Neill Avenue were not included in the district. It is also admitted that the cost of preparing the surface of the pavement on Main Street to receive the surfacing contemplated by the district is substantially the same as the cost of laying a suitable foundation for a similar surface on Neill Avenue.

It is a matter of common knowledge that the value and [6] benefit of pavement depend upon its extent. Pavement of the street in front of a single lot or parcel, with none in front of the adjoining lots, would be of comparatively little benefit; whereas, if the pavement extends for a considerable distance, so as to secure easy and convenient approach, the benefit to the single lot is correspondingly greater. Neill Avenue being a connecting street with Main Street, and being so situated as "to be and become the principal traveled avenue from one side of the city to the other," as alleged in the complaint, it is easy to understand that the extension of the pavement along that street, so as to make a more easy and convenient approach to Main Street, might be of special benefit to the lots along the latter.

What is said of Neill Avenue is equally applicable to the portion of Sixth Avenue in question, which, according to the map, likewise connects Main Street with what appears to be the platted portion of the western part of the city of Helena. These and other proper considerations may have

influenced the council in its determination of the necessity for the creation of this district and the extent of its boundaries.

The burden was upon plaintiffs to make a showing that [7] the city council, in creating this special improvement district and proceeding to have the contemplated work done, exceeded its authority or acted in an arbitrary manner. We are of opinion that they failed to do so, and that the trial court was right in denying the application for an injunction.

The judgment of the district court of Lewis and Clark county is affirmed.

*Affirmed.*

Mr. Chief Justice Callaway and Associate Justices Cooper, Holloway and Galen concur.